UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO SOSA,    : CIVIL NO: 3:12-CV-01724
           :
     Plaintiff   :
           : (Judge Munley)
   v.      :
           : (Magistrate Judge Schwab)
JOSEPH GRILLO,    :
           :
     Defendant  :
           :

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Francisco Sosa, claims that the defendant, a prison counselor, violated his Fifth Amendment right to remain silent in connection with a sex-offender-treatment program, used excessive force against him, and planned to transfer him in retaliation for his filing of this action. Currently pending is the defendant's motion to dismiss the third amended complaint and Sosa's motion for a preliminary injunction. We recommend that the defendant's motion to dismiss be granted in part and denied in part, and we recommend that Sosa's motion for a preliminary injunction be denied.

## II.  Background and Procedural History.

Sosa is an inmate at the State Correctional Institution in Frackville, Pennsylvania.  Prior to being transferred to SCI-Frackville, Sosa was an inmate at the State Correctional Institution in Waymart, Pennsylvania, and, on August 29, 2012, while incarcerated at that institution, Sosa filed a complaint, which he later amended. *Docs. 1 and 8*.  In these complaints, Sosa sued the Commonwealth of Pennsylvania, thirteen correctional officials, and three private attorneys who represented him in criminal matters that led to his conviction and incarceration. Sosa advanced a hodgepodge of claims against this array of defendants.  In these complaints, Sosa alleged: (1) that he was verbally and mentally abused by prison staff; (2) that prison supervisors failed to act promptly and favorably upon his various grievances; and (3) that he was denied due process in the course of disciplinary proceedings which resulted in a sanction of 120 days in restricted housing. *Doc. 1*.  Sosa also sued his criminal defense counsel for their alleged shortcomings in defending him during probation-revocation proceedings and postconviction proceedings. *Doc. 8*.  Finally, Sosa's complaint contained contradictory allegations regarding whether he had been physically assaulted by staff, with some pleadings asserting a claim that Sosa was assaulted, and other pleadings contradicting this claim. *Docs. 1 and 7*.

Along with these *pro se* complaints, Sosa filed a motion for leave to proceed *in forma pauperis*, which the court granted. As part of the court's legally mandated screening of *in forma pauperis* cases, Magistrate Judge Carlson carefully reviewed these two complaints, and he concluded that they failed to state a claim upon which relief may be granted. Accordingly, Judge Carlson recommended that the complaints be dismissed without prejudice to Sosa attempting to correct the deficiencies noted in the Report and Recommendation, a recommendation which Judge Munley adopted in October of 2012. *Docs. 9 and 14.*

In the meantime, in an apparent effort to comply with Judge Carlson's guidance regarding deficiencies in his prior pleadings, Sosa filed a document styled as an amended complaint. *Doc. 13.* This second amended complaint, however, had its own flaws and shortcomings. First, this complaint had no caption and did not clearly identify any defendants, leaving the court to speculate as to which defendants may be named in this pleading. *Id.* Furthermore, while the second amended complaint appeared to abandon claims against Sosa's former defense counsel, it still seemed to persist in bringing claims based on alleged verbal harassment, processing of inmate grievances, supervisory liability, and the conduct of disciplinary proceedings, claims that the court previously found to be legally deficient. *Id.* The second amended complaint also clarified that Sosa wished to bring an excessive force claim against some correctional defendants, but

it did not clearly identify those defendants purportedly because Sosa alleges that he was unconscious at the time of the assault and does not know who his assailants were. *Id.*

Judge Carlson carefully reviewed this second amended complaint, and he concluded that it failed to state a claim upon which relief may be granted. He recommended that the second amended complaint be dismissed with prejudice as to all claims against the Commonwealth of Pennsylvania and the Department of Corrections, all claims against prison official defendants Klopotoski, Gavin, Murphy, Banta, DeLucy, Delrosso, Elleh, Kosicuk, Vivanasky, and Smith arising out of allegations of supervisory liability and complaints concerning the processing of prison grievances, all claims against disciplinary hearing examiner Plaksa, all claims against Sosa's former counsel, and all claims of verbal harassment. *Doc. 16.* Judge Carlson further recommended that the excessive force claim be dismissed without prejudice to Sosa filing an amended complaint which would correct the defects noted in his Report and Recommendation. *Id.* Judge Munley adopted that Report and Recommendation. *Doc. 18.*

On November 20, 2012, Sosa filed a third amended complaint naming two defendants. *Doc. 19.* Sosa named a prison counselor, Joseph Grillo, as a defendant, and Sosa made a series of specific and detailed allegations against defendant Grillo. *Id.* Sosa also named the prison superintendent, Wayne Gavin, as

a defendant, but he merely alleged that Mr. Gavin is liable because he was responsible for the operation of the prison and failed to adequately investigate Sosa's prior complaints, allegations the court previously found to be legally insufficient. *Id.* Judge Carlson recommended that Sosa's third amended complaint be dismissed with prejudice as to defendant Gavin, but he recommended that it be served on defendant Grillo. *Id.* In early January of 2013, Judge Munley adopted that Report and Recommendation and remanded the case to the undersigned for further proceedings. *Doc. 32.*

Sosa filed a fourth amended complaint, which we ordered stricken from the record because Sosa did not seek or obtain either the opposing party's written consent or leave of court as required by Fed.R.Civ.P. 15(a)(2) and because the fourth amended complaint included claims that the court had already dismissed with prejudice. *Doc. 35.* Thereafter, Sosa filed motions for leave to file a fourth amended complaint, *docs. 37 & 42*, but because Sosa's proposed fourth amended complaint included claims and defendants that the court had already dismissed with prejudice, we denied those motions. *Doc. 91.*

Undeterred in his quest to add claims and defendants to this case, Sosa then filed a motion for reconsideration of the denial of his motions for leave to file a fourth amendment complaint and a separate motion for leave to file a supplemental complaint. *Docs. 93 & 100.* By a separate order issued this date, we have denied

those motions. Thus, the pending claims in this case are the claims against defendant Grillo in the third amended complaint.

Sosa alleges the following with regard to his claims against defendant Grillo, who is the unit manager of the sex-offender units at SCI-Waymart. Sosa alleges that he arrived at SCI-Waymart in early August of 2011, and in accordance with 42 Pa.C.S.A. § 9718.1, he was required to participate in the Department of Corrections' sex-offender-treatment program (SOTP). According to Sosa, he first met Grillo on August 9, 2011, but that meeting did not go well. In addition to talking about the offense for which Sosa was in prison, Grillo questioned Sosa about a June 2010 arrest. Sosa alleges that although he explained to Grillo that that matter was resolved in his favor at a preliminary hearing, Grillo told Sosa that he knows that Sosa got away with rape and that Sosa will be accountable for the rape or else Sosa will not complete the SOTP or make parole. Upset about this meeting, Sosa wrote to his attorney and a judge about the meeting, and he included a synopsis of the meeting in his Post Conviction Relief Act petition challenging the revocation of his parole.

Sosa alleges that, in January of 2012, he began the SOTP with Grillo. In early February of 2012, Grillo told Sosa that he was not being accountable for the rape for which he was arrested in June of 2010. Sosa told Grillo that that was a wrongful accusation and that that is not why he is in prison or in the SOTP. Sosa

also invoked the Fifth Amendment and told Grillo that he was violating his rights by trying to require him to admit to the rape. In response, Grillo provided Sosa with a notice advising him that he had 60 days to improve his progress in the program and to take responsibility. Sosa continued to attend the SOTP, but Grillo's focus on the incident underlying the June 2010 arrest caused him stress, headaches, and fear.

On March 28, 2012, Grillo again attempted to get Sosa to admit guilt regarding the incident underlying the June 2010 arrest. Sosa again invoked the Fifth Amendment, and he told Grillo to just focus on his offense of conviction. According to Sosa, Grillo then called Sosa a liar, an asshole, and a piece of shit, and Grillo told Sosa that he is cocky and that he is surprised that he has not had his ass kicked. Grillo then told Sosa to get out, and Sosa left the room. But Sosa did not get far. According to Sosa, in the hallway, he became dizzy and passed out. Sosa alleges that he does not recall what happened; he only recalls being helped on a stretcher and being taken to the medical department.

In the medical department, staff pricked Sosa's finger, took his blood pressure, and performed an EKG; they did not, however, remove Sosa's clothes. After a brief time in the medical department, Sosa returned to his block where inmate Dibbie allegedly told him that inmate Root had said that he saw Grillo kicking Sosa in the legs while Sosa was on the ground unconscious. Sosa reported

this, and on March 29, 2011, after questioning Sosa, a lieutenant questioned inmates Dibbie and Root outside of Sosa's presence. Sosa alleges that the Lieutenant then told the officers present to put all three inmates in the Restricted Housing Unit (RHU) because they are playing games.

In route to the RHU, Sosa was taken to the medical department again, and he was told to lower his pants. Sosa alleges that there were huge black-and-blue marks as well as swelling on both of his outer thighs, and staff took photos of his legs. Staff asked Sosa if he wanted an ice pack and Tylenol, and although Sosa stated that he did, he alleges that he did not receive either an ice pack or Tylenol. Sosa was put in a "camera cell" in the RHU. Later that afternoon, when a security team was conducting an investigation, Sosa again allegedly asked for an ice pack and Tylenol, but again he was not provided with either.

On April 2, 2012, Sosa was released from the RHU, but he was housed on the C-1 intake block instead of his previous block. According to Sosa, on April 17, 2012, he was called to the property room, but in route he was placed in handcuffs and taken to the RHU with no reason given other than that an investigation was pending. He alleges that he was later charged with self-mutilation and lying to an employee, and he was found guilty of those charges. On appeal, however, the charge of self-mutilation was dismissed.

According to Sosa, on August 31, 2012, in response his grievance, Grillo stated that Sosa was in the process of being transferred.  Sosa asserts that the then-pending transfer was retaliation for his filing this action.

Sosa presents three claims against Grillo in his third amended complaint: (1) an Eighth Amendment excessive force claim; (2) a Fifth Amendment claim; and (3) a retaliation claim.  He seeks declaratory and injunctive relief as well as compensatory and punitive damages.

In this Report and Recommendation, we address defendant Grillo's motion to dismiss the third amended complaint and Sosa's motion for a preliminary injunction.

## III.  Motion to Dismiss.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels,

conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. The Third Amended Complaint States an Eighth Amendment Excessive Force Claim Upon Which Relief Can Be Granted.

Sosa claims that Grillo violated the Eighth Amendment by kicking him when he was unconscious.

When prison officials are accused of using excessive force in violation of the Eighth Amendment the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Since this analysis entails issues of motivation, such claims often turn on factual disputes which cannot be resolved as a matter of law. Consistent with this fact-bound approach to the litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful

response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Not "every malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson,* 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley,* 475 U.S. at 327). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

The extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary. *Id.* at 37. "The extent of injury may also provide some indication of the amount of force applied." *Id.* But to establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. *Id.* Rather, the central issue is the force used by the officer, not the injury caused by the officer. *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

Grillo contends that Sosa fails to state an excessive force claim upon which relief can be granted because Sosa bases his claim on inadmissible double

hearsay—i.e., Inmate Dibbie told Sosa that Inmate Root said he saw Grillo kicking Sosa in the legs while Sosa was on the ground unconscious. While these statements are hearsay and Sosa cannot use hearsay to prove his claim, Sosa does not have to prove his claim at the pleading stage. Thus, while Sosa cannot rely on hearsay at the summary judgment or trial stages of the case, at the pleading stage, the allegation that Inmate Root said he saw Grillo kicking Sosa is sufficient to support Sosa's contention that Grillo did, in fact, kick him.

Grillo asserts that Sosa cannot describe the force used or the nature of the alleged kick because he was unconscious, and Grillo asserts that the alleged kick could have been *de minimis* and not significant enough to violate the Eighth Amendment. Grillo contends that if the kick had been forceful, it would be expected that Sosa would have woken up instead of remaining unconscious. Grillo continues that because Sosa remained unconscious after the kick, "it follows that it was not very forceful and is a doubtful violation of the constitutional prohibition against cruel and unusual punishment." *Doc. 64* at 6-7. There are several problems with this argument. First, we know of no physical or medical principle that provides that a forceful kick would necessarily wake up an unconscious person. Second, from the allegations of the third amended complaint, it is not clear that the alleged kicks did not wake Sosa. While Sosa alleges that does not recall what happened, he alleges that he recalls being helped on a stretcher and being taken to

the medical department. It is not clear that the alleged kicks did not rouse Sosa sufficiently such that he was aware of being put on the stretcher and taken to medical. Moreover, accepting the factual allegations as true and construing them in the light most favorable to Sosa, as we must in connection with a motion dismiss, we cannot say that the alleged kicks were a *de minimis* use of force given that Sosa alleges that he had swelling and huge black-and-blue marks on his thighs.

Given Sosa's allegations that Grillo kicked him while he was unconscious with such force as to cause swelling and huge black-and-blue marks, the third amended complaint states an excessive force claim upon which relief can be granted.

### C. The Third Amended Complaint Fails to State a Claim Based on Verbal Harassment.

Grillo contends that the third amended complaint fails to state a claim upon which relief can be granted based on alleged harassing statements he made.

Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights. *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006)("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment."). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or

deny a prisoner equal protection of the laws." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

The court has already dismissed with prejudice the claim of verbal harassment in Sosa's prior complaint. In the third amended complaint, Sosa does not set forth a claim of verbal harassment as a separate claim. Rather, it appears that the allegations in the third amended complaint about the names Grillo called Sosa and the statements he made to Sosa are just background allegations to Sosa's other claims, and such is permissible. But to the extent the third amended complaint is construed to contain a claim of verbal harassment, it will be recommended that any such claim be dismissed.

### D. Sosa Cannot Recover Monetary Damages from the Defendant in his Official Capacity.

Grillo contends that he is entitled to Eleventh Amendment immunity from Sosa's claims for monetary damages against him in his official capacity.

Claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

Any claim for monetary damages against Grillo in his official capacity is barred by the Eleventh Amendment. Claims against Grillo in his official capacity for prospective injunctive relief and claims against Grillo in his individual capacity for monetary damages are not barred by the Eleventh Amendment. Sosa recognizes this, and he asserts that he is suing Grillo in his individual capacity for monetary relief and he is suing Grill in his official capacity for prospective injunctive and declaratory relief.

### E. Sosa's Claims for Injunctive Relief Are Moot.

Grillo contends that Sosa seeks injunctive relief in the form of a transfer from SCI-Waymart, but because he is no longer housed at SCI-Wayment his claim for injunctive relief is moot. Grillo misreads Sosa's third amended complaint. Sosa does not request injunctive relief in the form of a transfer from SCI-Waymart. In fact, he requests an injunction ordering Grillo and Gavin to cease their then-proposed transfer of him and to cease forcing him to admit guilt to a crime he did not commit. Despite Grillo's misreading of the third amended complaint, we nonetheless conclude that Sosa's requests for injunctive relief are moot.

Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies,"

18

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011)(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)(quoting *Lewis, supra,* 494 U.S. at 477). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013)(quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). Generally, an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief. *Sutton v. Rahseed,* 323 F.3d 236, 248 (3d Cir. 2003); *Johnson v. Wenerowicz,* 440 F. App'x. 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory relief against the named defendants was rendered moot by his transfer to another prison).

Here, Sosa seeks two forms of injunctive relief. First, he seeks an order that he not be transferred from SCI-Waymart. But because Sosa has already been transferred, we cannot grant Sosa the relief he sought. Accordingly, that request

for injunctive relief is moot.  Second, Sosa seeks an Order that the defendant stop trying to force him to admit to a crime he did not commit.  Again, since Sosa is no longer incarcerated at SCI-Waymart, where defendant Grillo is located, and there is no basis to infer that he has had or will have any further contact with Grillo, this request for injunctive relief is also moot.

### F. Summary as to Grillo's Motion to Dismiss.

Based on the foregoing, we will recommend that Grillo's motion to dismiss the third amended complaint be grant in part and denied in part.  We will recommend that any claim for verbal harassment be dismissed and that Sosa's claims for injunctive relief be dismissed.  We will recommend that the motion to dismiss otherwise be denied.  We note that Grillo did not address Sosa's Fifth Amendment claim or retaliation claim in his brief in support of his motion for dismiss.  Accordingly, we have not addressed those claims, and those claims will go forward.

### IV.  Motion for Preliminary Injunction.

On March 4, 2013, Sosa filed a document titled "Order to Show Cause for an [sic] Preliminary Injunction and a Temporary Restraining Order."  He also filed a memorandum of law in support of that document, a document titled as a

declaration, and exhibits.  Because Sosa is proceeding *pro se,* we construed the documents liberally*,* and as such we construed the documents as a motion for a preliminary injunction and a brief and documents in support of that motion.  We set a briefing schedule for the motion, and the motion has been fully briefed.

Sosa is seeking an order that the defendant: return him to SCI-Waymart; expunge the misconduct against him for lying to an employee; return him to custody level 2[1]; provide sex-offender treatment retroactive from March 28, 2012[2]; notify the Pennsylvania Board of Probation and Parole that the defendant illegally interfered with his sex-offender treatment and that he should be immediately staffed for parole and paroled; provide mental-health treatment to help him cope with the injuries he sustained; refrain from harassing or threatening him; house him in the C-1 or O blocks; and if he is forced to serve his maximum sentence, house him at SCI-Waymart or SCI-Chester.

A motion for a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards.  "A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the

---

[1] In a later document, Sosa states that he has been returned to a custody level 2.  *See Doc. 114.*  Thus, his request for injunctive relief in this regard is moot.
[2] Sosa does not explain how treatment can be provided retroactively.

nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).

A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, it is an extraordinary remedy that places precise burdens on the moving party, and "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. *United States v. Price,* 688 F.2d 204, 212 (3d Cir. 1982). Indeed, a request for mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper,* 60 F.3d 518 (3d Cir. 1995)(quoting *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir. 1982)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, preliminary injunctive relief in a civil action with respect to prison conditions, such as the action here, must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm. *See* 18 U.S.C. § 3626(a)(2). Further, in considering a motion for preliminary injunctive relief, the court must give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system. *Id.*

For an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits and irreparable harm if the requested relief is not granted. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir. 1998); *Kershner,* 670 F.2d at 443. "As these elements suggest, there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (quoting *Little v. Jones,* 607 F.3d 1245, 1251 (10th Cir. 2010)(quoting *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994)). In assessing a motion for preliminary injunction, the court must also consider the harm to the defendants and whether granting the preliminary injunction will be in the public interest. *New*

*Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388 (3d Cir. 2012).

Judged against these exacting standards, Sosa's motion for a preliminary injunction fails. At the outset, Sosa cannot meet the first element for such injunctive relief since he has not shown a reasonable likelihood of success on the merits of the claim that defendant Grillo transferred him in retaliation for filing this action.[3] A prisoner claiming that a defendant has retaliated against him for exercising his constitutional rights must prove that: 1) his conduct was constitutionally protected; 2) he suffered adverse action at the hands of the defendant; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002). Although Sosa repeatedly and vehemently contends that Grillo transferred him in retaliation for filing this action, he has not presented evidence to support that contention.[4] Although Sosa's cites a grievance response in which the grievance officer states that Grillo informed him on August 31, 2012, that Sosa was in the process of being transferred to another facility, Grillo's

---

[3] When Sosa filed his third amended complaint he had not yet been transferred. He did, however, include in his third amended complaint a claim that his then-pending transfer was in retaliation for his filing this action.

[4] After this motion for a preliminary injunction was fully briefed, we stayed discovery pending a decision on the defendant's motion to dismiss the third amended complaint. Because the stay of discovery was not entered until after the motion for a preliminary injunction was briefed, it did not limit Sosa's ability to present evidence to support his contentions.

involvement in the actual decision to transfer is not clear. Moreover, Sosa has not presented evidence from which it can reasonably be inferred that his filing of this action was a substantial or motivating factor in his transfer. In fact, he has not presented evidence that Grillo even knew that Sosa had filed this case before the decision to transfer was made. In that regard, we note that while Sosa began this action on August 29, 2012, and Sosa was transferred from SCI-Waymat to SCI-Frackville on November 26, 2012, it was not until January of 2013 that the court ordered that the complaint in this case be served on Grillo. Accordingly, despite his contention that the defendant transferred him in retaliation for filing this action, Sosa has not shown that his filing of this action was a substantial or motivating factor in his transfer. *See Ambrose v. Twp. of Robinson,* 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."). Thus, Sosa has not shown a reasonable likelihood of success on the merits.

Further, we also note that granting the injunctive relief requested by Sosa, which would effectively have the court making *ad hoc*, individual decisions concerning the treatment of a single prisoner, could harm the defendant's and the public's interest. In this prison context, the interest in penological order could be adversely affected if the court began dictating the place of incarceration and

treatment for Sosa, one inmate out of thousands in the state prison system. Therefore, considerations of the harm to the defendant and the public's interest also weighs against Sosa in this case.

In sum, Sosa has not demonstrated a likelihood of success on the merits. Moreover, granting the extraordinary relief requested by Sosa could harm the public's interest and the interests of the defendant. An assessment of the factors which govern issuance of such relief under Fed.R.Civ.P. 65, therefore, weighs against Sosa and compels us to recommend that the court deny his motion for a preliminary injunction.

## V. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the defendant's motion (doc. 63) to dismiss the third amended complaint be granted in part and denied in part as follows: it is recommended that any claim for verbal harassment be dismissed and that Sosa's claims for injunctive relief be dismissed; and it is recommended that the motion to dismiss otherwise be denied. It is further recommended that Sosa's motion (doc. 53) for a preliminary injunction be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party

shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of October, 2013.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge