# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO SOSA, : No. 3:12cv1724
      Plaintiff :
: (Judge Munley)
  v. :
: (Magistrate Judge Schwab)
JOSEPH GRILLO, :
      Defendant :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Francisco Sosa (hereinafter "plaintiff") asserts constitutional tort claims arising from his incarceration at the State Correctional Institution in Waymart, Pennsylvania (hereinafter "SCI-Waymart") against prison counselor Joseph Grillo (hereinafter "Grillo"). Before the court for disposition is Magistrate Judge Susan Schwab's report and recommendation (hereinafter "R&R"). (Doc. 275). The R&R proposes denying plaintiff's motion for summary judgment (Doc. 257) and granting Grillo's motion for summary judgment (Doc. 217). Plaintiff filed objections to the R&R (Doc. 277), and they are ripe for disposition.

**Background**[1]

---

[1] The court will adopt Magistrate Judge Schwab's factual statement (Doc. 275, R&R at 2-5) in its entirety. See FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); see also 28 U.S.C. § 636(b)(1); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). To the extent plaintiff objects to Magistrate Judge Schwab's factual statement, plaintiff's objections will be addressed more particularly below. This background section is merely a brief overview of the case.

Plaintiff, a *pro se* inmate formerly incarcerated at SCI-Waymart, initiated the instant action on August 29, 2012.[2] (Doc. 1). Grillo is the sex offender unit manager and a counselor in the Pennsylvania Department of Corrections' (hereinafter "DOC") sex offender treatment program (hereinafter "the program") at SCI-Waymart. (Id.)

Plaintiff first met Grillo on August 9, 2011. According to plaintiff, the meeting did not go well because Grillo questioned plaintiff about a June 2010 arrest for rape related charges. (Id.) Plaintiff explained to Grillo that the June 2010 matter was resolved in his favor at a preliminary hearing, and therefore, he did not need to discuss that incident. (Id.) Grillo allegedly responded that he knows plaintiff got away with rape and that plaintiff will be accountable for the rape or else plaintiff will not complete the program or make parole. (Id.)

Several months later, in January 2012, plaintiff began the sex offender treatment program with Grillo. (Id. at 4). Shortly thereafter, Grillo again told plaintiff that he was not being accountable for the rape for which he was arrested in June of 2010. (Id.) Plaintiff invoked his Fifth

---

[2] The Pennsylvania Department of Corrections (hereinafter "DOC") transferred plaintiff from SCI-Waymart to another prison on November 26, 2012. (Doc. 218, Def. Statement of Facts ¶ 3). After serving his maximum sentence, the DOC released plaintiff from custody.

2

Amendment right against self-incrimination and advised Grillo that his questions pertaining to the June 2010 sexual encounter were improper. (Id. at 5).

On March 28, 2012, Grillo again attempted to get plaintiff to admit guilt regarding the incident underlying the June 2010 arrest. (Id. at 6). Plaintiff invoked the Fifth Amendment and asked Grillo to focus on his offense of conviction. (Id.) According to plaintiff, Grillo then called plaintiff "a liar, an asshole, and a piece of shit, and told plaintiff that he is cocky and that he is surprised that he has not had his ass kicked." (Id.) Grillo then directed plaintiff to leave the group. (Id.) Subsequent to leaving the room, plaintiff became dizzy and blacked out. (Id.) Plaintiff does not recall what happened next. (Id.) He only recalls being helped onto a stretcher and being taken to the medical department. (Id.)

The medical department staff assessed plaintiff and, soon thereafter, discharged him back to his cell. (Doc. 218, Def. Statement of Facts (hereinafter "SOF") ¶ 10). While in his cell, inmate Dibbie allegedly told plaintiff that inmate Root saw Grillo kicking plaintiff in the legs while plaintiff lay on the ground unconscious. (Doc. 19, 3d Am. Compl. at 7). Plaintiff reported to DOC staff what Dibbie told him and, on March 29,

3

2011, a lieutenant questioned plaintiff, Dibbie and Root separately. (Id.) Based on his initial investigation, the lieutenant directed correctional officers to put all three inmates in the restricted housing unit (hereinafter "RHU") because they were playing games. (Id.)

En route to the RHU, correctional officers escorted plaintiff back to the medical department because plaintiff alleged his thighs were swollen and bruised. (Id.) Medical department staff directed plaintiff to lower his pants and took photos of plaintiff's legs. (Id.)

On May 3, 2012, the lieutenant concluded his investigation and issued plaintiff a misconduct for self-mutilation and lying to an employee.[3] (SOF ¶ 15). The administrative disciplinary committee found plaintiff guilty of both charges and sanctioned plaintiff with 120 days of disciplinary time and loss of his job. (Id.) Plaintiff appealed his misconduct to the Chief Hearing Examiner's Office, which upheld the lying to an employee charge, dismissed the self-mutilation charge and reduced the original 120 days of disciplinary time to 90 days disciplinary custody. (Id.; Doc. 258, DOC letter dated 6/8/12 at 48).

---

[3] DOC employees charged plaintiff with self-mutilation because they believed plaintiff bruised himself to support Inmate Root and Dibbie's story that Grillo kicked plaintiff.

4

As a result of plaintiff's misconduct, his custody level status increased from Level 2 to Level 4 in June 2012. (SOF ¶ 37). Because SCI-Waymart does not house Level 4 inmates, the DOC transferred plaintiff from SCI-Waymart to another facility on November 26, 2012. (Id.)

Plaintiff avers three constitutional tort claims pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) against Defendant Grillo: (1) Eighth Amendment excessive force; (2) Fifth Amendment deprivation of the right to remain silent; and (3) First Amendment retaliation. (Doc. 19, 3d Am. Compl. at 3-11).

After an extended and contested period of discovery, Grillo filed a motion for summary judgment on September 3, 2014. Plaintiff also moved for summary judgment on January 13, 2015. Magistrate Judge Schwab issued an R&R on July 28, 2015, proposing the court deny plaintiff's motion for summary judgment and grant Grillo's motion for summary judgment. Plaintiff filed objections to the R&R, and they are ripe for disposition.

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report

against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

Furthermore, both parties filed motions for summary judgment. Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts with affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiff objects to the recommendation that the court grant Grillo's motion for summary judgment. Specifically, plaintiff contends: (1) the R&R fails to address the fact that Grillo's counsel misidentified plaintiff at

plaintiff's deposition; and (2) genuine issues of fact preclude summary judgment on his Eighth, Fifth and First Amendment claims. We address the objections *in seriatim*.

## A. Plaintiff's deposition

Plaintiff asserts his deposition is null and void because Grillo's counsel misidentified plaintiff at his deposition. Specifically, the deposition refers to plaintiff as inmate #AB2866. (Doc. 278, Pl. Dep. at 1). Plaintiff's correct inmate number, however, is **JZ**2866. (Doc. 268-2, Errata Sheet dated 5/7/14 at 14; Doc. 278, Medical Release at 2, 5; Doc. 278-1, Incident Report dated 3/28/12 at 2) (emphasis added). Thus, plaintiff argues his deposition cannot be used to support or defend any of the outstanding motions for summary judgment.

Plaintiff cites no authority for this proposition and our research has uncovered none. Clearly plaintiff acknowledges it was indeed him at the deposition because he spent a significant amount of time communicating with the court reporter to have his inmate number corrected to properly identify that it was him at the deposition. (Doc. 268-2, Errata Sheet dated 5/7/14 at 14). As such, the court will overrule plaintiff's first objection.

8

## B. Plaintiff's substantive objections

Plaintiff next raises three objections pertaining to each of his Bivens claims. The court will address the objections separately.

### 1. Bivens: Eighth Amendment use of excessive force

Magistrate Judge Schwab recommends granting Grillo's motion for summary judgment regarding plaintiff's use of excessive force claim arising from Grillo allegedly kicking plaintiff on March 28, 2012. The Eighth Amendment prohibits cruel and unusual punishment and has been interpreted to include the use of excessive force against inmates. Hudson v. McMillian, 503 U.S. 1, 4 (1992).

To determine whether the use of force is excessive, district courts consider whether DOC employees applied force in a "good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). Thus, to prevail on an Eighth Amendment excessive force claim, a prisoner "will ultimately have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of a 'good-faith effort to maintain or restore discipline.'" Watkins v. Gaddy, 559 U.S. 34, 40 (2010) (quoting Hudson, 503 U.S. at

9

9). Here, plaintiff cannot establish that the alleged assault actually occurred.

The undisputed evidence establishes that plaintiff does not know if Grillo, or anyone else, kicked him. Specifically, Grillo asked plaintiff to leave a program meeting on March 28, 2012. (Doc. 220, Pl. Dep. at 17). Plaintiff got up, left the room and began seeing dots. (Id. at 18). Shortly thereafter, plaintiff blacked out and fails to recall anything else until DOC staff helped him onto a stretcher and transported him to the medical department.[4]

Additionally, the undisputed evidence establishes that no one kicked plaintiff after he passed out. Plaintiff himself admits that the sole witness, Officer Fry, failed to see anyone kick him. (Doc. 277, Pl. Objs. to R&R at 11). Specifically, Fry stated that he:

> [W]itnessed Inmate Sosa collapse after leaving the B-2 Group room. He checked Inmate Sosa for signs of breathing and called a "Medical 55" over the radio. He then knocked on the B-2 Group Room door and asked Mr. Grillo if Inmate Sosa was one of his group members. He and Mr. Grillo stayed with the

---

[4] Initially, plaintiff argued the hearsay statements of two other inmates claiming they saw Grillo kick plaintiff established a genuine issue of material fact precluding summary judgment. (Doc. 280, R&R at 18-19). Plaintiff, however, has abandoned this argument. (Doc. 281, Pl. Reply at 10).

10

> Inmate until the arrival of medical personnel, who removed the inmate. At no time did he or Mr. Grillo assault the inmate.

(Doc. 278-1, Lt. Smith Report dated 4/6/12 at 4). At no point in time does Officer Fry state that he witnessed Grillo kick plaintiff.

Plaintiff contends Grillo must have kicked him because he has unexplained bruises on his legs. Specifically, plaintiff's medical report establishes plaintiff had an eight (8) centimeter (3.14 inch) bruise on his right thigh and a 6.7 centimeter (2.63 inch) bruise on his left thigh. (Doc. 278, Nursing Evaluation dated 3/29/12 at 5). The court is unaware of when or how plaintiff sustained these small bruises. The undisputed record, however, establishes that plaintiff was not harmed while unconscious. Therefore, the court will grant Grillo's motion for summary judgment on plaintiff's Eighth Amendment excessive force claim.

### 2. <u>Bivens</u>: Fifth Amendment Self-Incrimination

Plaintiff next claims Grillo's questions pertaining to past rape charges violated his Fifth Amendment right against self-incrimination. Specifically, Grillo, as a part of plaintiff's comprehensive sexual history, questioned plaintiff about a sexual crime he was charged with in 2010. The charges, however, were later withdrawn. Plaintiff vehemently argues

questions pertaining to these withdrawn charges contravene his Fifth Amendment right against self-incrimination. The court disagrees.

The Fifth Amendment, as incorporated and made applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. Though a prisoner already may have been convicted and imprisoned for an offense, the Fifth Amendment still applies to ensure that the individual not be compelled to bear witness against himself or to divulge information that might incriminate him in future criminal proceedings. Minnesota v. Murphy, 465 U.S. 420, 426 (1984). "To qualify for the Fifth Amendment privilege, the communication must be testimonial, incriminating and compelled." Hiibel v. 6th Judicial Dist. of Nev., 542 U.S. 177, 189 (2004).

"Not all pressure necessarily 'compel[s]' incriminating statements. McKune v. Lile, 536 U.S. 24, 49 (2002) (plurality). In the prison context, "those penalties that merely alter the degree of comfort or freedom that an inmate is afforded, within the context of his confinement, but that otherwise remain within the permissible bounds of the inmate's prescribed sentence, are differences in measure alone and thus do not amount to

12

compulsion under the Fifth Amendment." Roman v. DiGuglielmo, 675 F.3d 204, 214 (3d Cir. 2012). "In contrast, penalties that go beyond the mere 'unpleasant' and are different in kind than those conditions of confinement imposed on all prisoners–that strike at the core of an inmate's recognized entitlements, that threaten his bodily safety, or that impose additional punishment beyond that already imposed by fair judicial process–constitute impermissible compulsion under the Fifth Amendment." Id. (quoting McKune, 536 at 51).

Plaintiff argues Grillo's questions regarding a past sexual encounter–an encounter which lead to plaintiff's arrest–were improper because the Commonwealth withdrew the charges. Grillo asserts the questions were proper because they pertained to plaintiff's sexual history. After a careful review, the court agrees with Grillo.

Plaintiff misses the goal of the sex offender treatment program. The goal is not to trick plaintiff into admitting to charges that were withdrawn. Rather, the program seeks to enable and empower plaintiff to take control of his sexual history by discussing all of his past sexual encounters–including a sexual experience which resulted in criminal charges that were later withdrawn. Moreover, the consequences of

13

plaintiff's expulsion from the sex offender's program were not so compulsive as to violate the Fifth Amendment. Rather, plaintiff merely had to restart the program at another institution. Thus, the court will grant judgment in favor of Grillo on plaintiff's Fifth Amendment claim.

### 3. <u>Bivens</u>: First Amendment Retaliation

Finally, Magistrate Judge Schwab recommends granting summary judgment in favor of Grillo regarding plaintiff's First Amendment retaliation claim. Plaintiff asserts Grillo transferred plaintiff from SCI-Waymart to another correctional facility in retaliation for plaintiff filing this action. Grillo argues a legitimate penological reason justified plaintiff's transfer–namely, plaintiff's custody level changed from Level 2 to Level 4 and SCI-Waymart does not house Level 4 inmates. After careful review, the court agrees with Grillo.

A prisoner alleging retaliation in violation of the First Amendment must establish that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) a causal link exists between the exercise of his constitutional rights and the adverse action taken against him. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir.

14

2001).

Regarding the third element, the Third Circuit Court of Appeals has imported a burden-shifting framework into the prisoner-retaliation context for proof of a "causal link between the exercise of [a prisoner's] constitutional rights and the adverse action taken against him." Id. The first step is for the prisoner to prove that his protected conduct in exercising a constitutional right was a substantial or motivating factor in the challenged decision. Id. at 334. To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation. Id.

Once the prisoner makes this initial showing, the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a

15

legitimate penological interest.  Rauser, 241 F.3d at 334.  This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials . . . who possess the necessary expertise."  Id.

In the instant matter, assuming the first two elements have been met, plaintiff has produced no evidence that his grievances or this lawsuit were a substantial and motivating factor for his transfer from SCI-Waymart to another correctional facility for two reasons.  First, Grillo could not have retaliated against plaintiff for filing this lawsuit because he knew nothing about the lawsuit until he was served.  Specifically, plaintiff filed this action on August 29, 2012.  (Doc. 1).  After an initial screening of plaintiff's complaint, the court directed the Clerk of Court to issue the summons on January 10, 2013 (Doc. 32).  The United States Marshals served Grillo after January 10, 2013, which is almost two (2) months **after** plaintiff was transferred on November 26, 2012 (SOF ¶ 37).  See DeFranco v. White, 387 F. App'x 147, 155 (3d Cir. 2010) (noting that a two month lapse in time from the alleged protected activity to the alleged retaliation was not unusually suggestive).  Therefore, the procedural time line establishes

16

that Grillo knew nothing about this lawsuit until two months after the DOC transferred plaintiff.

Second, even if plaintiff had demonstrated that his protected conduct motivated his transfer, Grillo's uncontroverted evidence establishes that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest. As set forth above, plaintiff's custody level changed from Level 2 to Level 4 in June 2012 (SOF ¶ 37). Because SCI-Waymart does not house Level 4 inmates, the DOC transferred plaintiff from SCI-Waymart to another DOC facility on November 26, 2012. (Id.) Accordingly, the record demonstrates that plaintiff's own misconduct charge caused his custody level status to change, resulting in his transfer from SCI-Waymart. Thus, the court will adopt Magistrate Judge Schwab's recommendation and grant summary judgment in favor of Grillo on this issue.

**Conclusion**

For the above-stated reasons, the court will overrule plaintiff's objections, adopt Magistrate Judge Schwab's R&R and grant summary judgment in favor of Defendant Grillo. Plaintiff's attempts to artificially

manufacture disputed issues of fact regarding his deposition lack merit. Additionally, viewing the evidence in the light most favorable to plaintiff, the undisputed material facts establish Grillo is entitled to judgment as a matter of law on plaintiff's First, Fifth and Eighth Amendment claims. An appropriate order follows.

Date:  09/30/2015                        s/ James M. Munley
                                                                   **JUDGE JAMES M. MUNLEY**
                                                                   **United States District Court**